Today is case number 21-1298 and 21-1803, Great American Insurance Company v. AIG Specialty Insurance Company. Mr. Silverman, whenever you're ready. Thank you, and good morning and may it please the court. My name is Mark Silverman of DLA Piper for the Defendant Appellant AIG Specialty Insurance Company. This is a case about how insurance policies consider long running schemes of a newly acquired subsidiary of an insured that began years before acquisition by the insured. Now the district court found that AIG had a duty to defend, and that was erroneous for two reasons. One, it erroneously found that the underlying certified class action, which alleges that Houlihan engaged in a scheme to lure thousands of homebuyers and sellers into undisclosed non-consensual dual agent transactions since 2011, six years before it was acquired, were not related acts. And two, it erroneously disregarded the related acts provision, which is the only provision in the policy that explains when a scheme like this is considered to have first begun. Now first, the underlying litigation alleges a related scheme dating back to 2011. Under the policy, related acts means all first party events and third party events which are the same, related, or continuous. Well, why don't you start there? I mean, shouldn't we start with whether Houlihan is a subsidiary or not? Yes, we can start there. And if it is, then the question is just, it doesn't matter whether it's a subsidiary or not, it's just, is the loss covered or not, or is there a duty to defend or not? Correct. So yes, so we can start there. So the insurance policies like this are intended to bundle schemes, like those asserted here, into one claim dating back to when the scheme began. That's what the related act provision does. So it is expressly incorporated, related acts provision, through the general terms and conditions. And it is expressly incorporated when you look at when first party and third party events first occur. So if we start with the subsidiary provision. The subsidiary provision says loss arising out of first party events or third party events occurring or allegedly occurring after the effective time that the named entity obtained management control of such subsidy. That's when coverage is provided when a duty to defend could occur. The related acts provision defines when first party events or third party events occur. It says all first party events and third party events that are related or continuous or arise from a common nucleus of fact are considered to- So I understand that the state case could, you know, perhaps it could end up proving that all of the different acts of working on both sides of a transaction in a real estate transaction were tightly linked. Maybe they were all directed from some central office and it was all really a coherent scheme. But the lawsuit could also show that actually there's just, you know, loose internal controls and they did this a bunch of times and they were not tightly linked and it was not a closely knit scheme. Is that not possible? I don't think that's possible at this time because what we're looking at is the pleadings. And what we're looking at is the law says that you look at the pleadings to determine whether it's related acts. You look at it to see whether there's a reasonable possibility that the lawsuit will, that the defendant might eventually be held to be obligated to indemnify the insurer under any provision of the insurance policies, right? Correct. So shouldn't I look at this lawsuit and determine whether it's possible that what it will end up showing is that you had a series of discrete transactions in which Hooligan engaged? I think the standard is reasonably possible and I don't think- Right, reasonably possible. So I understand that you're emphasizing this allegation that says it's a scheme. But at the same time, if you look at the actual instances, there are lots of different things that happened. Goldstein, who was a buyer, was pressured into making an excessive offer. Burks, who were sellers, were told that they were going to be given maximum exposure for their sale and they didn't get it. I mean it seems like these are lots of different kinds of harms. Sure. So before we get to even the definition of related acts in the contract, isn't it possible that this lawsuit will end up proving that Hooligan engaged in lots of different transactions where it did something impermissible but it was not a centrally organized scheme such that it was all part of one single course of events? No, because I think when you read it holistically, it says it is one event. And it was certified by the underlying court for all home buyers and sellers of real estate from January 1, 2011 to July 14, 2018, in which defendant represented both seller and buyer in the same transaction. You could get rid of the peripheral details. In fact, great Americans- So are you saying that just because these are all instances in which Hooligan represented the seller and the buyer in a transaction, they're all therefore related? Not simply because of that, but also because of the relief that the plaintiffs seek, the claims that they seek. They're all based on the fiduciary duty breach, the nondisclosure under New York law of the dual agency. Is it possible for a company to just breach a fiduciary duty over and over again and those are separate transactions? Well, it could, but that's not what is- Well, it does if it's all based on the same common scheme. Because I know that's what I was saying earlier. I was saying, well, okay, maybe it's possible that it will be proven that it was one common scheme that was centrally directed by the Hooligan home office. But isn't it possible that it might turn out that actually Hooligan was just kind of lax about this requirement of disclosure about representing sellers and buyers? And so it just happened over and over again that they represented sellers and buyers without an adequate disclosure. But that's the wrong- That's the possible outcome of this litigation, is it not? That's the wrong under which all plaintiffs in all class are seeking relief. If they were lax over a long period of time, that is the wrong. Okay, so you're saying that even if the explanation of this was that Hooligan had some kind of lax internal controls and just did the same thing impermissibly over and over again to different buyers and sellers, those would still be related acts? Yes, and this is- Well, you did the same thing, but you did it over and over pursuant to a common scheme, and that- I understand, but I keep pressing you on this common scheme thing, and then you said, well, the common scheme doesn't really matter. What matters is the nature of the act. And I say, well, so that means that anything is related if it just looks similar, and then you go back to the scheme. No, the scheme matters, and the causes of action matter, and the relief matters. So it's the scheme. It's what you are basing your cause of action on, that that wrongdoing, the nondisclosure, leads to a cause of action, breach of fiduciary duty. That is the same for everyone. That is a certified class- My question is, is it not possible that Hooligan at time one had an inadequate disclosure about representing both the buyer and the seller, and at time two did the same thing, but these are independent- these are just two instances where they did the same thing, but they're not related. They just happened at two different times. Is that impossible? I think it would- those two acts are related. When you look at the policy, it talks about a continuous- So if at one time they didn't give an adequate disclosure, and then 20 years later they did it one more time, those are still related acts. If they were not based on the same scheme of nondisclosure, of an intentional scheme of them not providing statutory disclosure forms, pre-filling them wrong, that this was taught to them. I mean, if it was isolated events occurring 20 years, that might be a different- Well, that is my hypothetical. That might be a different story. So the simple fact that they resemble each other is not enough to make them related acts. The fact that it's part of a common scheme is what is essential to say that they're related acts. The fact that it's a common scheme, the fact that we look at the language of the policy, which says continuous and says common nucleus of facts- Okay, well, so let me ask you that question. So the policy says the same, so these are not the same acts. Correct. It says continuous. They're not continuous acts, right? They're different transactions. It's a continuous scheme. Okay, you think it's a continuous scheme. Yes. Well, the individual transactions where they dealt with these different buyers and sellers are not continuous acts. But- So you're saying that the complaint essentially alleges one continuous act. Yes. One overall scheme. There's not a single- I'm sorry. So they're not actually related acts at all. It's just it alleges one act, one continuous act, you're saying. It's one continuous related act that starts at the beginning. And this is not about individual property sales. Not a single plaintiff is making a claim on their own behalf. They're making a claim about a class action. That's why it's been certified. Well, they're all going to get individual relief, right? They're all going to get individual relief. So we do have individual acts because there are individual buyers and sellers who claim to have been harmed. Right. And the case law says- So there has to be a relation between those instances, right? So it is not- Like those instances are not continuous. What happens to the Goldsteins and the Burks is not continuous, right? Those are individual instances, right? If you look at her allegations of wrongdoings, there's a- She alleges the same exact allegations of wrongdoing. You can get rid of her pressuring allegations. She doesn't make a claim on pressuring. That's the only unique thing they said. She doesn't make a claim on pressuring. She makes identical allegations. You can look at A35, Paragraphs 45. Houlihan acted as a dual agent. Houlihan failed to provide full and frank disclosure. Houlihan failed to disclose the dentists' remit and benefits. Failed to describe statutory- This doesn't make that a whole claim, right? So they failed to disclose that, but that shows some kind of harm. That is the claim, and the harm, that is the claim. If you look at the claim, it's the breach of fiduciary duty. There's a breach of New York law of nondisclosure. That's it. You could forget about what she does. She had a breach because of this dual agency that wasn't properly disclosed. Well, in any event, even if you were to focus just on the form, so giving the form to Goldstein and giving the form to Burke, those are not the same act, right? And it's not continuous either because they're two different instances where you give the form. It is two different instances of the same – giving the same form and not providing the same information. And so we would posit- It's not the same because they're two different- It is not the same. It's not continuous because you complete the giving of the form to Goldstein and you complete the giving of the form to Burke. That's not a continuous act, right? Well, we would say it's continuous on the scheme, but I understand. Right. So your claim is it's related because it looks like you're doing the same thing. It is related and or arise from a common nucleus of fact. That common nucleus of fact is the nondisclosure. And the policy at Houlihan, which is expressly alleged, the policy at Houlihan- Why is the common nucleus of fact the nondisclosure as opposed to the real estate transaction that Houlihan is conducting? I think that is because, Your Honor, that is the way it's pleaded. And what we're doing is looking at the allegations of the complaint, the third amended complaint, which makes the allegations that it's on the first page. This is a claim about a scheme by Houlihan. This is a claim about- So if the complaint had said Houlihan has been negligent or lax about its internal controls, and as a result, a number of buyers and sellers have been harmed by a breach of fiduciary duty, and this occurred in a series of independent acts in which they failed to adequately make disclosures, then you would have a different case. And if it wasn't a class action, a certified class action, which a certified class action has to have commonality, it has to have typicality, and it was certified on those basis, and the court in the underlying- But in my hypothetical, could you not have a class action? So if the failure of Houlihan was they weren't paying attention to this issue, and therefore they did the same kind of wrong over and over again, but it wasn't part of a common scheme, it was negligence or oversight or something, why could you not have a class action on those facts? I don't know if you could have a class action because I don't know if it would satisfy commonality and typicality, and it's not what we have here. And while we can speculate, I don't think it's a reasonable possibility when you look at the allegations of the complaint. I know I'm way over, but I'm happy to keep talking about that or happy to talk about more of the related acts or yield and come back. Why don't you make one final point, and then we'll hear from you in the middle. Sure. You know, I think that once you understand that they're related, you understand that the related acts provision is the only stopgap to make that policy, the AIG policy, the intent of it, which is to bundle these schemes together to make that work. And, Your Honors, I'll yield and come back. Thank you. Thank you. Thank you, Your Honor. James Ruggieri for Appleby Great American Insurance Company. Judge Park, I sort of begin where you began, which is the definition of subsidiary and whether Houlihan qualifies as a subsidiary under the contract. And it's important, the words of the contract control, we've heard some testable argument about the intent of AIG to group these for purposes of grouping a scheme. That's nowhere in the policy. The AIG policy, in fact, doesn't say what AIG says it says. The terms third-party events, wrongful acts, related acts are separately defined. They serve different purposes. And the definition of related acts is not subsumed in the definition of wrongful acts or third-party events. And that's important because when you get into some of the cases that AIG cites, which all relate to when a claim was made, not the interplay between related acts and wrongful acts, those cases actually have different policy language, including this Court's decision in Nomura, the Second Circuit case of 2015. I thought the first-party events and third-party events definitions do include related acts. They do not, Your Honor. They actually do not. And that's at the appendix at A99. They actually refer to third-party events. And the way this program is structured – So why does it matter that the definition incorporates another term? So you're relying on the definition of subsidiary, right? You're not relying on an operative provision of the contract. It's within the definition of subsidiary that says third-part – coverage and affordability of this policy shall only apply to laws arising out of third-party events occurring or allegedly occurring after the effective date – or the effective time that the named entity obtained management control, right? Correct. It's an operative provision that is in the definition. And you're saying even though it's in a definition, it's still – like it reads as an operative provision and so we need to give it effect. So why wouldn't the same thing apply to the definition of related acts? Well, I think it does apply to the same definition of related acts. Our argument is not that related acts does not have the meaning in other parts of the policy, including the special professional liability cover section. We think that the definition of related acts has the meaning where it applies, where it's stated, and it's stated in six different provisions of the policy, three times in the general terms and conditions section. But you're saying essentially that you have to look to an operative provision of the policy to see if it incorporates a definition, right? I'm saying – But you're also relying on the definition of subsidiary in order to get liability in the first place. I'm relying on the definition of subsidiary and the limitation of coverage for subsidiaries, which is the provision in the last section there, which is coverage afforded on the policy is limited to laws. So you can point to an operative provision that uses the term. I am, and it's important because the way the program works – you know, what claims you have to cover is in the definition. It's not in the operative provision, right? It's in the definition in the operative provision with regard to third-party events, which is defined as wrongflex. And it's important, Your Honor, because the program actually is different than I think the suggestion was made. My client's policy only covers acts that occur prior to the end date of my policy, which is January 9, 2017. The AIG policy is the one that covers the acts that take place after my policy ends. Otherwise, there is a gap in coverage here. But the gap's created by AIG's argument because that's a situation where my client would only pay for – I wouldn't pay for Ms. Goldstein's claim. My client would only pay for claims involving acts or sales or purchases prior to January 9, 2017. So Houlihan would have no coverage for any claims involving acts. That's sort of a version of a question that I asked opposing counsel. So if, in fact, the complaint had alleged – and I guess it does allege – that there's one scheme that's centrally operated out of Houlihan, and all of these individual transactions are all aspects of one scheme that they launched before it became a subsidiary of Home Services, would those be related acts? I think, Your Honor, they may be related acts for some purposes, but not for purposes of proving AIG's burden of showing an impossibility. So even if it were one centrally directed scheme? A centrally directed scheme involving 10,000 buyers and sellers of homes over seven years of time? It's hard for me to fathom that would be the allegation. It's hard for me to fathom a situation where there's an impossibility of coverage under the AIG policy involving separate homes, separate counties. So the only question is whether there's a possibility of coverage under the AIG policy, right? So then I thought what you might have said was that it's possible that there might still be liability even if it's not a centrally directed scheme. And that's with regard to Ms. Goldstein's claim. Is that a possible outcome of the class action? That's absolutely a possible outcome of the class action complaint. In fact, those claims were pled in their individual and class representative capacities. As the court acknowledged, some of the claimants, Ms. Goldstein in particular, does allege acts that are unrelated to the dual agency. She alleged she was pressured in breach of the fiduciary duty into buying a home above market price and has this condition. So if she has allegations that are not related to something that's common to the class, is that still a live claim? I think it is a live claim because it's part of the lawsuit. If the class action were to fail, and I think it's important that this class wasn't certified until January of this year, AIG said no duties to defend in 2018. Nobody prior to this year had said there was any relationship between the claims, much less a relationship between all the claims. And AIG breached this obligation back in 2018. There certainly was a possibility that the court would say no to class certification, in which case there's an obligation to defend, or even in this case, where all the court did is say that there's commonality and typicality for purposes of satisfying the New York rule on class actions. It didn't say that the acts are related within the meaning of the AIG policy, nor could it. That would require an evidentiary hearing. So the court couldn't do that. And we have a situation here where, yes, if the dual agency claims fail, then the other claims do survive that happen in class actions where the claims are made in the individual capacities. So if Avalahan is just not exercising sufficient oversight, and so it involved all of these dual representations, but it wasn't centrally directed or part of a kind of unitary scheme, would there be liability? Is that a possible outcome of the lawsuit? Well, it's a possible outcome of the lawsuit, but I think Judge Cote had it exactly right. She said it's AIG's burden to prove what related acts means and that the claims are related, the acts are related, and they didn't prove that. But she offered a possible understanding. She said, well, maybe they're just talking about individual transactions as opposed to a relationship between all of these different transactions. Well, maybe they are. Do we have a reason to think that they are? Maybe. What's the reason why it does? Well, maybe they are, but I think the point of her discussion of that is it was AIG's burden. It's a heavy burden in this state to prove the applicability of exclusion. And if they can't show what related acts means. Because there's an ambiguity in favor of the insured. Because there's an ambiguity in favor of the parties seeking coverage. And here we are setting parties seeking coverage. So your position is actually it's not, these are not clearly unrelated acts, but there's an argument either way, and therefore you need to resolve the dispute in favor of the insured. My argument is some of the acts, including Ms. Goldstein's alleged wrongful acts regarding the pressuring of the sale, and what she argues is unrelated to the dual agency, that claim would survive even if the dual agency claims failed. So I think that is unrelated. And with regard to the other issues, as I think Judge Cote said, we don't know what related acts means. And the insured gets the benefit where you don't know. And if the insurer doesn't prove the applicability of exclusion and doesn't convince the court on what related acts means, then the insurer loses. The insurer has to extend coverage. The tie goes to the policyholder in that circumstances, Your Honor. So I think, you know, and I would point out, Judge, they don't cite a single case interpreting the interplay between wrongful acts and related acts for purposes of defining or determining whether a subsidiary is entitled to coverage. It's nowhere. It's nowhere. All of their cases talk about claims, related claims. And NMURA is important because the NMURA policy said even with regard to the relationship of claims, it said that all related claims shall be treated as a single claim. The AAG policy doesn't say all related acts shall be treated as a single wrongful act. If it did, we may have a different argument here. It doesn't say that. It doesn't say that. Related acts should be treated as if they occurred at the time of the first one. Well, it says they should be at the time of the first one. I mean, you are treating it as one act in the relevant respect because we care in this case about the time. And it says that, Your Honor, in connection with the applicability of exclusions L, M, and N. If AAG were right that the definition of related acts were subsumed or incorporated, the definition of wrongful acts, those exclusions would make no reference to related acts. The reality is that as this policy sets up, the subsidiary is covered. I'm sorry. So is your argument, it seems like you're throwing out a bunch of arguments, which you're allowed to do, but I just want to sort them out. So it seems like you're saying on the one hand because the term related acts is not being used in relationship to a subsidiary, therefore it just doesn't apply, and we don't even think about related acts when we're talking about liability for a subsidiary. Is that right? That argument. That would also say that, well, related could mean connected in this way, or it could be just based on the individual transaction. And since we can't resolve that ambiguity, the tie has to go to the insurer. But those are two separate arguments. Those are two separate arguments. And the third argument would be the unrelated acts, which are part of Ms. Goldstein's claims. So I would add that as a- So the third argument would be that the lawsuit still could, even if these are all related acts in providing the disclosure, the lawsuit still involves claims that are unambiguously unrelated, and so therefore AIG has a duty to defend. That's correct, Your Honor. And with regard to subsidiaries, I think it's important because my argument is that if Houlihan, as it does, qualifies as a subsidiary, then it's entitled to coverage the same as any other insured under the policy, which is for purposes of wrongful acts or related acts if there are two, that don't predate the retroactive date of the policy, which is July 1, 2010. And none of these claims do. That's the protection that AIG bargained for in this policy. And just to clarify the nature of your third argument, so the way that there would be liability for these unambiguously unrelated acts would be if the class certification somehow fails and the litigants pursue their own individual claims. It's that the class claims fail on the merits, in which case the litigants would be able to pursue their individual claims. Yes, that is a distinct possibility. The court has not ruled, as this panel knows, just by virtue of granting class certification, that those claims are legitimate claims. All the court ruled is that for purposes of New York law, which it said has to be liberally construed, that the claims have sufficient commonality and typicality to survive the test under the New York statute governing class certification. That's it. And, again, that decision was made two years after AIG said no duty to defend, after AIG told Houlihan, we're not going to pay this defense. Clearly there's a possibility of coverage. Clearly there's a possibility that class certification would be denied, in which case there was a possibility of coverage on the policy and AIG had a duty to defend. Thank you, Your Honors. Thank you. Mr. Silverman, you have two minutes. Your Honors, there's no tie here. What you do here is look at the allegations in the complaint. You look at what we know now. What we know now is there's a certified class action based on the allegations of nondisclosure that form the causes of action for every class plaintiff. Maybe counsel would have a makeable argument if class hadn't been certified, but class has been certified, and we don't speculate. Case law is clear on that. And if you look at Goldstein's So if the class hadn't been certified, if we were still litigating this case before the class had been certified, it would be a just totally different case? You're saying that class certification means that these are necessarily related acts? It's the nail in the coffin, but I think But can't you have commonality and typicality for a bunch of individual discrete acts where a defendant inflicted the same harm on somebody over and over again? But that's what their cases focus on, if there's a different harm, if there's a different duty. When you look at the cases they cite from other jurisdictions, they use this same different duty, different harm test. New York doesn't look at that. New York looks at New York looks at a sufficient factual nexus, and that's what's the difference. What you're focusing on is different duties, different harms, but that's okay. In New York Inside the cases, just in principle, is it not possible that a defendant inflicts a similar harm on customers over and over again? And so they have a class It doesn't mean that those are all related acts, right? Like an insurant can do Right, and it relies on the scheme. I get that point. And more so, look at Goldstein's affidavit. In this class certification, when they're talking about typicality, she submitted an affidavit that says she has no interest in controlling this individually. And more importantly, no case, I'm not aware of a single case, that finds claims in a class action, a single class action, are not related. The cases in New York, in fact, reject the proposition that counsel is suggesting, that claims within a single class action are different claims. They just flat out reject them. That's Zunin's sign. Nomura says that. Checkwright says that. Now, on to the second topic, the related acts provision. Great American is asking this court to read out the related acts provision. And their suggestion of looking at just the retroactive date and the wrongful acts definition produces an absurd result that any claim after 2010, they say look at the retroactive date, that's 2010. Wrongful act after that, covered, duty to defend. That's absurd. That would result in an act, say one act in 2013 by the subsidiary before acquisition, that could be covered. The only stopgap to that is the related acts provision, which everyone understands would be how this policy would be interpreted. And Great American. Can I, if I could just pause you on that point. Why is it absurd to restrict the related acts provision to the exclusions, which I understand are not an issue here? Well, it's not absurd to restrict them to exclusions. But when you're talking about exclusions, courts recognize that insurance policies in particular, insurers, like to use belts and suspenders. So the fact that it's in an exclusion and not explicitly said in a grant of coverage, that is okay. Courts understand that, that insurers use belts and suspenders. And courts, and this court has recognized the citizens. It's not belts and suspenders. It's just the belts, right? We just have the provision in the definition, and we don't put it in one of the operative provisions. Well, it is in. It would be belts and suspenders if it repeated itself throughout the contract. But the problem here is it's only in the definitional provision and not in the operative provision. It is in it because it's expressly incorporated through the general terms and conditions that say it's expressly interpreted. It is in it. I understand. So if you put something in a definitional term, and then you have a general thing that says the definitions are incorporated by this statement, maybe it's incorporated. It's not belts and suspenders. It's the opposite of belts and suspenders. It's like the bare minimum of incorporated. What they're trying to do is avoid language of inclusion. If you look at Citizens Insurance Company 880F-73, this court recognized belts and suspenders. Insurers sometimes avoid inclusionary language, but yet put in exclusionary language. That's a belts and suspenders concept. And so when you include all related acts in the subsidiary definition, just as Great American suggests, it's actually granting coverage for related acts that occurred after acquisition. But when you go back, that would contradict the related acts provision, which says you bundle them all up at the first time. So you can't. Look at how they write it. It's absurd. You cannot have it like that. And for that reason, I think it is clearly incorporated and the acts are related. And this court, we ask to reverse and enter judgment for AIG. Thank you both. We'll take the case under advisement. That concludes our business for today. So I'll ask the court and deputy to adjourn. Thank you. The judges will give you a call. And I'm going to end the session here. Can you hear us?